Entered on Docket October 25, 2013

Below is the Order of the Court.



_____
**Brian D. Lynch**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>ACTIVE CAPITAL PARTNERS FUND 1, L.P.<br><br>Debtor. | Case No. 09-42899-BDL<br>Lead Case<br><br>Substantively Consolidated |
| In re:<br><br>ZACHARY MILLER and JENNIFER MILLER.<br><br>Debtors. | Case No. 10-44958<br><br>**MEMORANDUM DECISION AND ORDER ON CHAPTER 7 TRUSTEE'S FINAL APPLICATION FOR COMPENSATION** |

Chapter 7 trustee for these consolidated cases, Miles R. Stover ("Trustee"), has filed his sixth and final application for compensation and reimbursement of expenses (dkt #214). Trustee has been paid $11,721.25 already as interim compensation, and the Final Application seeks an additional $62,147.14 in compensation for a total compensation for his Chapter 7 work of $73,868.39. This request is based on the commission formula of 11 U.S.C. §326(e) for the $1,687,279.60 in distributions that Trustee made as chapter 7 trustee.

ORDER ON TRUSTEE'S FINAL APPLICATION FOR COMPENSATION - 1

Unsecured creditor John Simonsen has objected to Trustee's request for compensation (dkt #220)[1] on the grounds that Trustee should not be compensated for approximately $1 million of the funds he distributed in the chapter 7 because those funds were collected during the time when the Miller case was in chapter 11 and Mr. Stover was the chapter 11 trustee. Trustee was compensated for his work as chapter 11 trustee in collecting those funds, and as he just turned them over to himself as chapter 7 trustee to distribute, Mr. Simonsen argues that awarding Trustee compensation for also distributing those funds is "double-dipping."

A hearing was held on Trustee's Final Application on October 9, 2013 and the Court gave both Trustee and Mr. Simonsen the opportunity to file additional pleadings addressing what work Trustee did during the chapter 11 phase of the Miller case that involved work other than liquidating assets. Trustee filed a timely supplemental response (dkt #226) identifying the funds provided from the chapter 7 estate to the chapter 11 estate. Mr. Simonsen also filed a supplemental response (dkt #227) providing a declaration about the sale of the Miller assets and five suggested alternatives for how to reduce the Trustee's fee to reflect the chapter 11 work done.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334; this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The Court makes the following findings and conclusions pursuant to Fed. Rules Bankruptcy Procedure 9014 and 7052.

By everyone's agreement, Trustee has achieved a significant return for unsecured creditors in this case – 50 cents on the dollar. And no one disputes that Trustee has done excellent work on this case. The question at hand is whether the facts (1) that Trustee served as the chapter 11 trustee in the Miller case before it was converted to chapter 7 and consolidated with Active Capital Partners, (2) that during the chapter 11 period Trustee

---

[1] There has been no objection to Trustee's request for reimbursement of expenses of $45.51.

ORDER ON TRUSTEE'S FINAL APPLICATION FOR COMPENSATION - 2

liquidated most of the Millers' assets resulting in the majority of funds distributed to creditors in these cases, and (3) that Trustee was already compensated for that work on the chapter 11 case are "extraordinary circumstances" contemplated by the Ninth Circuit Bankruptcy Appellate Panel in *In re Salgado-Nava*, 431 B.R. 911, 921 (B.A.P. 9th Cir. 2012) which justify adjusting Trustee's compensation down from the Section 326(e) commission. The Court holds that they are.

**Background**

Debtor Active Capital Partners Fund 1, L.P. was an investment-type fund that took loans from individuals to invest in exchange for promissory notes. Debtor Zachary Miller was the general partner for Active Capital. Active Capital commenced its chapter 7 case on April 28, 2009 in response to several lawsuits that had been filed by the "investors" seeking to recover the funds they had given to Active Capital. On its schedules, Active Capital listed only two assets, an E-Trade account and a Note worth in total approximately $152,000, with debts to the various investors of over $2.1 million.[2] In adversaries filed shortly after the Active Capital case was, Active Capital represented that the Millers had personal assets sufficient to satisfy the debts, and if the state court actions would be stayed, the Millers could contribute the funds necessary to satisfy all the outstanding notes.

Terrance Donahue was appointed the Chapter 7 trustee for the Active Capital case, and he filed his own adversary in August 2009 to stay the state court actions, *Donahue v. Miller, et al.*, Ad. 09-4127. A preliminary injunction was entered in the adversary September 30, 2009.

This was apparently not enough to stop the litigation pressure against the Millers' individually, and they filed their Chapter 11 case on June 17, 2010. The Millers' schedules

---

[2] Claims were filed for over $5 million.

ORDER ON TRUSTEE'S FINAL APPLICATION FOR COMPENSATION - 3

listed assets of approximately $978,000 for their residence and several items of personal property, and also listed their various interests in different business entities – the ones Trustee ended up liquidating – all valued at "unknown." The most valuable of these turned out to be Northwest Restaurant Enterprises, Inc. ("NWRE"), which owned several pizza restaurants, of which Miller owned 75%. The sale of this asset resulted in over $1 million for the debtors' estates.

In August 2010, the United States Trustee moved for the appointment of a Chapter 11 trustee in the Millers' case alleging fraud and dishonesty by the Millers in managing their own affairs, the likelihood of diminution of the estate and the absence of any likelihood that the Millers could reorganize. The Millers responded by trying to convert their case to Chapter 7, then withdrew the attempt to convert, and eventually agreed to the appointment of a Chapter 11 trustee, which was ordered on September 2, 2010. Mr. Stover was appointed as the Chapter 11 trustee on September 3, 2010.

The time entries from Trustee's first application for compensation, filed in the Miller case (10-44958, dkt #132) show that Trustee began having conversations about the case with the US Trustee on September 8, 2010. The next day, Trustee met with Sebastian Brost, who was the minority owner of NWRE and spent time over that day reviewing operation related agreements. Mr. Brost's declaration, submitted with Simonsen's supplemental response, indicates that Mr. Brost told Trustee he was interested in acquiring the pizza businesses "immediately." Trustee's time records support this, as five days later, on September 13, 2010, Trustee was already reviewing an acquisition proposal and term sheet from Mr. Brost. Mr. Brost went on to acquire NWRE and several other Miller assets. Trustee moved for the sale of the Millers' stock in NWRE and in five other pizza-related companies on November 29, 2010, just over two months into the Miller case. (10-44958, dkt #81). Mr. Brost was the only bidder on five of the entities (including NWRE) and was the prevailing bidder on the one

ORDER ON TRUSTEE'S FINAL APPLICATION FOR COMPENSATION - 4

contested entity (Midwest Pizza Partners). (10-44958, dkt #101). The sale of the entities was approved by the Court on December 15, 2010, and the sales garnered $1,698,929 for the Miller estate, comprised of $998,929 in cash at closing and promissory notes of $700,000. *Id.*

Trustee abandoned the Millers' residence back to Debtors in January 2011. Substantially all of the individuals who had provided funds to Active Capital also filed proofs of claim in the Miller case. Trustee filed an omnibus objection to these claims as to the Millers to re-set their amounts to ensure a proportional recovery in May 2011. That same month, Trustee also moved to sell some of the Millers' personal property (some vehicles, boats and trailers). He also objected to the Millers' exemption of their stock in Mazoil, Inc. In June 2011, Mr. Donahue as trustee for Active Capital, responded to the omnibus claim objection in the Miller case as to Active Capital's proof of claim in the Millers' case, on the grounds that the claims of the investors should be resolved in the Active Capital case, not the Millers' case.[3] The individuals with claims for the funds invested also commenced an adversary proceeding against the Millers claiming their debts were non-dischargeable under 11 U.S.C. §523(a)(2)[4].

The Millers' case had then been pending over a year with no Plan of Reorganization proposed, and the Court issued an order to show cause on August 23, 2011. The next day, Trustee filed a motion to convert the Millers' case to chapter 7, noting that with the sale of their business entities the Millers no longer had any income to fund a reorganization, and that Trustee had met with them once in the Spring of 2011 to discuss their proposing a plan to deal with resolving "non-dischargability" claims which never materialized. The Trustee did not intend to propose his own plan. (10-44958, dkt #193).

---

[3] Mr. Donahue filed an omnibus claims objection based on the same cash-in-cash-out theory in the Active Capital Case in August 2011 (09-42899, dkt #35). The objection was substantially granted on September 23, 2011, before the Miller and Active Capital Partner cases were consolidated.

[4] The individuals prevailed on summary judgment in the adversary and their claims against the Millers have not been discharged. Ad. 11-4246,dkt #67.

ORDER ON TRUSTEE'S FINAL APPLICATION FOR COMPENSATION - 5

The Miller case was converted to Chapter 7 on September 13, 2011. No funds were ever distributed during the chapter 11 case. Per Trustee's supplemental declaration (dkt #227) at the time of conversion the Miller chapter 11 estate had $1,106,801.68 in cash on hand in various bank accounts, as well as $479,666.20 of principal, plus accruing interest, due on the five Notes for the sales to Mr. Brost. All of these funds and assets were transferred from the chapter 11 estate to the chapter 7 estate. Trustee was then appointed as the chapter 7 trustee for the Miller estate on September 14, 2011 (10-44958, dkt #209).

Two weeks later, Mr. Donahue as trustee for Active Capital Partners, filed motions to consolidate the Active Capital Partners and Miller chapter 7 cases. Trustee joined in both motions. The order granting consolidation was entered on October 18, 2011 and Trustee was appointed trustee of the consolidated estates on October 26, 2011.[5]

Trustee filed three interim applications for compensation (as did his counsel) for his work throughout the chapter 11. Trustee was paid $28,524.00 for his work during that period, based on the hours he actually worked from September 8, 2010 to September 12, 2011, at a rate of $250 per hour.

As Chapter 7 trustee of the consolidated estates, Trustee addressed claim objections to other claimants (dkt #90-95), resolved an outstanding objection on the claim of one individual (Morgan Davis, dkt #127) and sold two other assets of the Millers – stock in J.W.L. Management (dkt #128) for $10,000 and stock of Mazoil, Inc. (dkt #146), which auctioned for $109,125. Trustee also moved for and made four interim distributions to unsecured creditors which paid out over $1.5 million.

Trustee made three applications for interim compensation for his work during the chapter 7 period, and was awarded $11,721.25 for that work based on hours actually worked

---

[5] Mr. Donahue filed an application for compensation for his law firm work for representing him as Chapter 7 trustee of Active Capital Partners (dkt #61), but never sought a trustee fee for his work for Active Capital and he stated he did not intend to do so. As Mr. Donahue did not seek any trustee fee, the fee splitting provision of 11 U.S.C. §326(c) does not come into play in this matter.

ORDER ON TRUSTEE'S FINAL APPLICATION FOR COMPENSATION - 6

from September 13, 2011 to December 31, 2011 at $250 per hour and work from January 1, 2012 to September 30, 2012 at $262.50 per hour. Trustee's final application is for work from October 1, 2012 to date, but is based on the commission calculation set forth in Section 326(e) for total distributions made during the course of the chapter 7 case.

The Court finds, based on the work done and the timing of how soon Trustee began looking at a sale of most of the Millers' business assets, that during the chapter 11 case, Trustee never attempted to run the Millers' businesses and never sought to reorganize the Miller estate. From the get go, both of these cases have been about liquidation. To that extent, Trustee's actions in the chapter 11 case are substantially similar to what a chapter 7 trustee would have done if the Millers had originally filed as a chapter 7. While Trustee did spend some time reviewing the contracts and related agreements for the Millers' businesses, he was contemplating a sale of the assets within five days after being appointed and had sold the Millers' largest asset within two months.

**Conclusions of Law**

The 2005 amendments to the Bankruptcy Code added Section 330(a)(7), which provides that a trustee's reasonable compensation is treated as a "…commission, based on section 326." In turn, 11 U.S.C. §326(a) provides that compensation may be allowed under Section 330 based on 25 percent of the first $5,000 of distributions a trustee makes, 10 percent on amounts from $5,000.01 to $50,000, 5 percent on amounts from $50,000.01 to $1 million, and 3 percent on any money in excess of $1 million.

Prior to the amendments, a chapter 7 trustee's reasonable compensation was calculated under §330 the same as other professionals, subject to a cap calculated by the percentages set forth in §326. The amendments have reversed that analysis, providing for a preliminary calculation of reasonable compensation from the commission percentage under §326(a), subject to court review for reasonableness pursuant to §§ 330(a)(1) and (7). *See,*

*e.g., In re Healy*, 440 B.R. 834 (Bankr. D. Idaho 2010); *In re McKinney*, 383 B.R. 490 (Bankr. N.D. Cal. 2008).

The Bankruptcy Appellate Panel in *In re Salgado-Nava* analyzed section 330(a)(7) and its interplay with Section 326's statutory commission. 473 B.R. at 915-919. Its synthesis and conclusion was to rely on the commission calculation, holding that it "should be presumed reasonable" in most instances, "absent extraordinary circumstances" requiring additional court review. *Id.* at 921. If there are extraordinary circumstances, then the bankruptcy court must determine if there is a rational relationship between the amount of the commission and the type and level of services rendered. *Id.* at 920.

A situation similar to the present case was considered by the court in *In re Luedtke*, no. 07-70924, 2011 Bankr. LEXIS 604 (Bankr. C.D. Ill. Feb. 28, 2011) where a debtor started out in chapter 11, confirmed a plan that generally provided for liquidating all of its real estate, but when debtor was not able to complete all the sales contemplated in the plan, converted to chapter 7. The debtor in possession had approximately $1.3 million in its bank account when his case converted, and no distributions had been made to creditors. A year after conversion, the chapter 7 trustee had collected approximately $200,000 more and sought to make an interim distribution to creditors. *Id.* at *3-4. The trustee also filed a petition for trustee fees seeking a percentage commission off the $1.3 million that he sought to disburse. When a creditor objected, the bankruptcy court undertook a review of the work done by the trustee. The court noted that even though the trustee had not collected the $1.3 million, there was still work to be done related to those funds – reviewing and filing tax returns related to the monies, reviewing claims and filing objections to determine the creditor pool and who was entitled to distributions, etc.. There, as here, both the creditor and the court commended the trustee on doing this work promptly and efficiently resulting in large distributions to creditors. *Id.* at *12. However, the *Luedtke* court had to ultimately conclude that the commission based request for

fees was "disproportionate to the actual services rendered" where the majority of funds distributed were "handed to the trustee." *Id.* The court reduced the trustee's compensation by reducing the percentage applied to distributions between $50,000.01 to $1 million from 5% to 2.5%, in order to amply reward the trustee for a job well done while also recognizing that a significant portion of the funds being distributed "required no work on his part to collect."

The Ninth Circuit in *In re Financial Corp. of America*, 946 F. 2d 689 (9th Cir. 1991), addressed a somewhat similar case pre-BAPCPA where one individual served as both a chapter 11 trustee and a chapter 7 trustee, and "turned assets over to himself" upon conversion. The trustee then sought to include the turned over funds in calculating the trustee compensation for the chapter 11 work. The Court agreed with the underlying Bankruptcy Appellate Panel decision that fees could be awarded to the trustee for his two different hats – each trusteeship could be awarded independent fees – and the turned-over funds could be included in calculating both fees. *Id.* at 690. While concluding that fees awarded the chapter 11 trustee were independent of his fees as a chapter 7 trustee, the Court noted that there was a risk of "double-dipping" in the situation which the court could address by reducing the trustee's fee when it determined the appropriate fee for the chapter 7 work.

Trustee was awarded his full compensation for his chapter 11 work, but now this Court must consider whether an adjustment is necessary to avoid "double-dipping." The Court concludes "extraordinary circumstances" are present here, not only because the trustee was trustee in the prior chapter 11 where most of the assets were liquidated resulting in funds handed over to himself as chapter 7 trustee, but also because the chapter 11 case involved very little services in operating the debtor's businesses. The fees being sought using the commission calculation in the chapter 7 do not bear a rational relationship to the type and level of services rendered in this case.

ORDER ON TRUSTEE'S FINAL APPLICATION FOR COMPENSATION - 9

The Court concludes that an adjustment must be made to Trustee's compensation for the chapter 7 work as the majority of the funds distributed in the chapter 7 were obtained from liquidating assets in the chapter 11, and Trustee was already compensated for that work in the chapter 11 case. The Court does not adopt any of Creditor Simonsen's proposals, including the suggestions to just subtract the amount of funds that were turned over from the chapter 11 to the chapter 7 estate, to limit Trustee to the total amount of chapter 7 commission for his work in under both chapters or to apply an hourly rate calculation to the chapter 7 work. Trustee still did substantial work in the chapter 7 as to the funds that were obtained during the chapter 11 period (coordinating the preparation of tax returns, claim resolution, distributions calculations, etc). The *Luedtke* approach of reducing the percentage for the commission is more consistent with *Salgado*-Nava and Simonsen has suggested something similar in two of his proposed calculations.

Considering all the evidence presented, the Court concludes that Trustee is entitled to total compensation for his Chapter 7 work of $54,868.39, which is calculated by reducing the percentage on distributions between $50,000.01 and $1 million from 5.0% to 3.0% ( reducing that portion of the commission from $47,500 to $28,500). As Trustee has already received $11,721.25 in interim compensation, he is awarded $43,147.14 as compensation on this Final Application. Trustee is also awarded reimbursement of his expenses of $45.51.

/// END OF ORDER ///